Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA  90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA DOYLE, DERIVATIVELY AND ON BEHALF OF RESONANT INC., <br><br> Plaintiff, <br><br> vs. <br><br> TERRY LINGREN, JOHN E. MAJOR, ROBERT B. HAMMOND, JANET K. COOPER, and RICK KORNFELD, THOMAS R. JOSEPH, <br><br> Defendants, <br><br> And <br><br> RESONANT INC., <br><br> Nominal Defendant. | CASE No.: <br><br> VERIFIED  SHAREHOLDER DERIVATIVE COMPLAINT FOR: <br><br> (1)  BREACH  OF  FIDUCIARY DUTY; <br> (2) CORPORATE WASTE; <br> (3)GROSS  MISMANAGEMENT; AND <br> (4) UNJUST ENRICHMENT <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Lisa Doyle ("Plaintiff"), by her undersigned attorneys, derivatively and on behalf of Resonant Inc. ("Resonant," or the "Company"), files this Verified Shareholder Derivative Complaint against Individual Defendants Terry Lingren, John

1

E. Major, Robert B. Hammond, Janet K. Cooper, Rick Kornfeld, and Thomas R. Joseph, (collectively, the "Individual Defendants") for breaches of their fiduciary duties as directors and/or officers of Resonant, gross mismanagement, abuse of control, and unjust enrichment for his complaint against Individual Defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Resonant, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.     This is a shareholder derivative action which seeks to remedy wrongdoing committed by Resonant's directors and officers from August 14, 2014 through the present (the "Relevant Period").

2.     Resonant is a Delaware corporation that maintains its principal executive offices at 110 Castilian Drive, Suite 100, Santa Barbara, California 93117.

Verified Shareholder Derivative Complaint

3.     Resonant is a development stage company, which focuses on creating filter designs for radio frequency ("RF") front-ends in the mobile device industry.

4.     Throughout the Relevant Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, prospects and performance. Specifically, during the Relevant Period, Defendants made false and/or misleading statements and/or failed to disclose that: (1) there were errors in the valuation of warrant liabilities, weighted average shares outstanding and earnings per share, and the notes to the condensed consolidated financial statements for the three and six months ended June 30, 2014 and 2013; (2) the Company's disclosure controls and procedures were not effective as of June 30, 2014; (3) the Company would be unable to meet Milestone 4 pursuant to its development agreement in the first quarter of 2015; and (4) as a result of the foregoing, the Company's financial statements and statements concerning its business operations and prospects were materially false and misleading at all relevant times.

5.     On October 8, 2014, the Company filed a Form 8-K with the SEC revealing that its previously issued unaudited condensed consolidated financial statements for the three and six month periods ended June 30, 2014 and 2013 included in its Form 10-Q for the quarter ended June 30, 2014 filed with the SEC on August 14, 2014 ("2014 2nd Quarter 10-Q") needs to be restated. The Company also revealed that it identified a material weakness in its internal controls as of June 30, 2014.

Verified Shareholder Derivative Complaint

6.     On this news, shares of Resonant fell $0.13 per share from its previous closing price to close at $6.35 per share on October 9, 2014.

7.     On October 10, 2014, the Company filed an amended Form 10-Q for the quarter ended June 30, 2014 with the SEC (the "Amended 2014 2nd Quarter 10-Q"), which restated its unaudited condensed consolidated financial statements and related disclosures for the three and six months ended June 30, 2014 and 2013.

8.     On this news, shares of Resonant fell $0.25 per share from its previous closing price to close at $6.05 per share on October 13, 2014.

9.     On February 26, 2015, the Company announced that the completed duplexer design it delivered to its first customer for consideration did not meet all the specifications in the development agreement.

10.    On this news, shares of Resonant fell $5.07 per share or over 32% from its previous closing price to close at $10.40 per share on February 27, 2015.

11.    In light of Defendants' conduct, the Company and Lingren being named as defendants in several federal securities fraud class action lawsuits filed in this Court, a majority of the Board cannot consider a demand to commence litigation against themselves on behalf of the Company with the requisite level of disinterestedness and independence.

12.    The Company has been substantially damaged as a result of the Individual Defendants' knowing breaches of fiduciary duty and other misconduct.

**JURISDICTION AND VENUE**

4

13.     Diversity jurisdiction is conferred by 28 U.S.C. § 1332.  Plaintiff and Individual Defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

14.     The Court has personal jurisdiction over each of the Defendants because each Defendant is an individual who is a citizen of California or who has minimum contacts with this District to justify the exercise of jurisdiction over them.

15.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, one or more of the Defendants either resides or maintains executive offices in this District, and the Defendants have received substantial compensation in this district by engaging in numerous activities that had an effect in this District.

### PARTIES

16.     Plaintiff is a current shareholder of Resonant.  Plaintiff has been a shareholder of Resonant common stock during the Relevant Period, and has continuously held Resonant common stock at all relevant times.  Plaintiff is a citizen of New York.

17.     Nominal Defendant Resonant is a Delaware Corporation headquartered in Santa Barbara, California. Resonant is a development-stage company, which focuses on creating innovative filter designs for RF front-ends—the circuitry in a mobile device responsible for analog signal processing—for the mobile device

5

industry. Resonant trades on the NASDAQ Capital Market ("NASDAQ") under the ticker symbol "RESN." The defendants below are beleived to be citizens of California.

18.     Defendant Terry Lingren ("Lingren") is a director and the founder of the Company. He has served as the Company's Chairman of the Board, and is currently the Chief Executive Officer.

19.     Defendant John E. Major ("Major") is the Chairman of the Board, and has served as a director of the Company since December 2013.

20.     Defendant Robert B. Hammond ("Hammond") is the Chief Technology Officer, and has served as a director of the Company since June 2013.

21.     Defendant Janet K. Cooper ("Cooper") has served as a director of the Company since January 2014.

22.     Defendant Rick Kornfeld ("Kornfeld") has served as a director of the Company since December 2013.

23.     Defendant Thomas R. Joseph ("Joseph") has served as a director of the Company since July 2015.

24.     The defendants referenced above in ¶¶18 – 24 are sometimes referred to herein as the "Individual Defendants."

## ~~DUTIES OF THE INDIVIDUAL DEFENDANTS~~

25.     By reason of their positions as officers, directors and/or fiduciaries of Resonant and because of their ability to control the business and corporate affairs of Resonant, the Individual Defendants owed Resonant and its shareholders fiduciary

Verified Shareholder Derivative Complaint

obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Resonant in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Resonant and its shareholders so as to benefit all shareholders equally.

26. Each director and officer of the Company owes to Resonant and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

27. The Individual Defendants, because of their positions of control and authority as directors and/or officers of Resonant, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

28. To discharge their duties, the officers and directors of Resonant were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

29. Each Individual Defendant, by virtue of his position as a director and/or officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and

officers of Resonant, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants has been ratified by the Individual Defendants who collectively comprised the Resonant's Board at all relevant times.

30.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on NASDAQ, the Individual Defendants had a duty not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, management, earnings, and present and future business prospects, so that the market price of the Company's common stock would be based upon truthful and accurate information.  Accordingly, the Individual Defendants breached their fiduciary duties by causing or recklessly permitting violations of the federal securities laws.

31.     To discharge their duties, the officers and directors of Resonant were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.  By virtue of such duties, the officers and directors of Resonant were required to, among other things:

(a)     refrain from acting upon material inside corporate information to benefit themselves;

(b)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(c)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results;

(e)     remain informed as to how Resonant conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws; and

(f)     ensure that Resonant was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

32.     Each of the Individual Defendants further owed to Resonant and the shareholders the duty of loyalty requiring that each favor Resonant's interest and that of its shareholders over their own while conducting the affairs of the Company and

Verified Shareholder Derivative Complaint

refrain from using their position, influence or knowledge of the affairs of the Company to gain personal advantage.

33.     Moreover, the Individual Defendants, as either officer, director, and/or employee of the Company, were required to comply with the Company Code of Business Conduct and Ethics Policy ("Code of Ethics").   The Company's proxy statement filed with the SEC on April 30, 2015 with the SEC states that "our board of directors has adopted a Code of Business Conduct and Ethics that applies to all of our employees, officers and directors, including our chief executive officer, chief financial officer, and other executive and senior financial officers."   The Code of Ethics itself states, in pertinent part:

**CODE OF BUSINESS CONDUCT AND ETHICS RESONANT INC.**

**I.     Introduction**
This Code of Business Conduct and Ethics (the "Code of Conduct") summarizes the ethical standards and policies that guide your conduct as an employee or other representative of Resonant Inc. (the "Company"). The purpose of this Code of Conduct is to promote ethical conduct, compliance with applicable laws and regulations, and deter wrongdoing. The policies outlined in this Code of Conduct are designed to ensure that the Company's employees, including its officers (collectively referred to herein as "Employees") and members of its board of directors ("Directors"), act in strict accordance with the letter and the spirit of the laws and regulations that apply to the Company's business, and in a manner consistent with standards of high integrity. In addition to being bound by all other provisions of this Code of Conduct, the CEO and Finance Employees of the Company are subject to the Code of Ethics for the CEO, Senior Financial Officers and Employees with Financial Reporting Responsibilities included as part of this Code of Conduct. The Company expects its Employees and Directors to exercise good judgment to uphold these standards in their day-to-day activities, to avoid the appearance of impropriety, and to observe all applicable laws and

regulations while conducting business on behalf of the Company. Employees and Directors are expected to read the policies set forth in this Code of Conduct and ensure that they understand and comply with them. All Employees and Directors are required to abide by the Code of Conduct. The Code of Conduct should also be provided to and followed by the Company's agents and representatives, including consultants, resellers and temporary workers. The Code of Conduct does not cover every issue that may arise, but it provides general guidelines for exercising good judgment. Employees and Directors should also refer to the Company's other policies where applicable for implementing the general principles in this Code of Conduct. Any questions about the Code of Conduct or the appropriate course of conduct in a particular situation should be directed to the Company's Chief Executive Officer or Chief Financial Officer, as appropriate. Any violations of laws, rules, regulations or this Code of Conduct should be reported immediately in accordance with the Company's Whistleblower Policy. The Company will not allow retaliation against an Employee or Director for a report made in good faith, and will take reasonable steps where possible to protect the anonymity of reporting parties where such anonymity is desired. Employees and Directors who violate this Code of Conduct will be subject to disciplinary action. Each Employee and Director must sign the acknowledgement form in Appendix A to this Code of Conduct and return it to the Company's Human Resources Department indicating that he or she has received, read, understood and agreed to comply with the Code of Conduct on at least an annual basis. The signed acknowledgment form(s) will be placed in the individual's personnel file. Subsequently on an annual basis, employees will be asked to re-certify their 2 knowledge and compliance with the code, and further, will be asked to confirm that they are not aware of any acts which they believe are not compliant with this Code of Conduct and applicable laws and regulations.

## II.    Ethical Standards of Conduct

The Company is committed to conducting business in a fair and open manner with the highest regard for its customers, employees and community. We expect all Employees and Directors to act with the highest ethical standards within the letter and spirit of the law. Our success depends not only on our skills and abilities, but on our integrity. During the course of his or her employment or service with the Company, each Employee and Director is expected to: (a) pursue Company objectives in a manner that does not impair the Company's integrity or violate the trust of its Employees, customers or the public at

large; (b) be truthful and accurate in all of his or her statements and actions on behalf of the Company; (c) protect the Company's confidential information and property; (d) treat fellow Directors, Employees, customers, vendors and suppliers with respect and dignity and maintain fair and honest relationships with all customers, vendors, suppliers and other business partners; (e) observe all laws, regulations, ordinances, and rules applicable to the operation of the business; (f) ensure the quality and sustain the value of the Company's products and services; and (g) avoid situations that may engender or give rise to the appearance of a conflict between personal interests and the business interests of the Company, except as permitted by this Code of Conduct or by law.

### III.   Compliance with Laws, Rules and Regulations

Employees and Directors must comply with all laws, rules and regulations applicable to the Company and its business, as well as applicable Company policies and procedures. Each Employee and Director must acquire appropriate knowledge of the legal requirements (including the Foreign Corrupt Practices Act and similar anti-corruption laws) relating to his or her duties and the country in which such Employee primarily renders services on behalf of the Company, sufficient to enable him or her to recognize potential problems and to know when to seek advice from the Company's Chief Executive Officer or Chief Financial Officer. Violations of laws, rules and regulations may subject the violator to individual criminal or civil liability, as well as to discipline by the Company. These violations may also subject the Company to civil or criminal liability or the loss of business. Any questions as to the applicability of any law, rule or regulation should be directed to the Company's Chief Executive Officer or Chief Financial Officer. 3

### IV.   Insider Trading

The purpose of the Company's Insider Trading Policy is to establish guidelines to ensure that all Employees and Directors comply with laws prohibiting insider trading. No Employee or Director in possession of material, nonpublic information may trade the Company's securities (or advise others to trade) from the time they obtain such information until after the Company makes a public disclosure of such information in accordance with the Company's external communications policies and applicable law. Anyone – including Employees and Directors – who knowingly trades Company securities while in possession of material, nonpublic information or who tips such information to others will be

subject to appropriate disciplinary action up to and including termination. Insider trading is also a crime. Employees and Directors also may not trade in the shares of other companies about which they learn material, nonpublic information through the course of their employment or service with the Company. All employees must read and be familiar with the Company's Insider Trading Policy.

## V.    Conflicts of Interest

A "conflict of interest" occurs when a person's private interest interferes with the interests of the Company as a whole. A conflict situation can arise when an Employee or Director takes actions or has interests that may make it difficult to perform his or her Company work objectively and effectively. Conflicts of interest may also arise when an Employee or Director, or a member of his or her family, receives improper personal benefits as a result of his or her position with the Company. Loans to, or guarantees of obligations of, such persons are of special concern. Employees As a representative of the Company, you are expected to avoid any activity that creates a situation in which your actions or loyalties are divided between personal interests and the Company's interests, or between the Company's interests and those of another entity or person. If you are unsure of whether an actual or potential conflict of interest exists, you should consult your manager or the Company's Chief Executive Officer or Chief Financial Officer promptly. You are prohibited from entering into any transaction or relationship involving an actual or potential conflict of interest without the prior written approval from your manager, in consultation with the Company's Chief Executive Officer or Chief Financial Officer, if you are an Employee who is not an executive officer, or (ii) the Company's Board of Directors (or a Committee of the Board of Directors designated for such purpose), if you are the Chief Executive Officer, Chief Financial Officer, or an executive officer of the Company. The list below contains examples of situations that may be deemed to constitute a conflict of interest requiring prior approval: (a) Owning, operating, acting as a director for or being employed as an employee or consultant by any business that competes, directly or indirectly, with the Company or that is related to the Company's business (e.g. supplier, partner or customer). 4 (b) Engaging in any business transaction with the Company except in connection with its regular Employee programs. (c) Entering into a new, or significantly expanding an existing, direct or indirect personal financial relationship with a competitor, customer, or supplier; however, generally no conflict will be deemed to exist in the case of ownership of less than 1 percent of

the publicly traded stock of a corporation. (d) Awarding a contract or entering into a financial transaction on the Company's behalf (or encouraging other Employees to do so) with a family member or someone with whom an Employee has a significant personal or financial relationship. (e) Engaging in any other employment or extensive personal projects during work hours, or using the Company's property in other employment. (f) Developing outside of the Company any intellectual property that is or may be related to Company's current or potential business. (g) Soliciting the Company's Employees, vendors, or customers to purchase goods or services of any kind for purposes not related to the Company's business, or to make contributions to any organizations or in support of any non-Company authorized causes. (h) Soliciting or entering into any business or financial transaction with an Employee whom you supervise, either directly or indirectly. In addition to the above activities that may require prior written approval, all Employees (including executive officers) are required to promptly notify their manager of any of the following events or circumstances: (i) Receiving or giving gifts which are outside of the bounds of reasonable and customary gifts in the industry. In addition, if you are giving a gift, it is your responsibility to ensure that your conduct complies with the limitations and approval requirements of the Company's expense policies and its policies relating to international business activities. (j) Soliciting or entering into a romantic relationship with an Employee whom you either supervise, directly or indirectly, have influence over career decisions, or have access to sensitive personnel data. This guideline helps to ensure fair treatment and judgment across all Employee decisions. (k) Learning that a company with which you have an existing financial relationship (other than ownership of less than one percent of a publicly traded corporation) becomes a competitor, customer, or supplier of the Company.

*Directors*

Directors entering into relationships or transactions that could give rise to an actual or potential conflict of interest are expected to promptly notify the Chair of the Audit Committee (or, if the Director is the Chair of the Audit Committee, another member of the Audit Committee) and recuse themselves from participation in any deliberations or decisions made by the Board of Directors (or any Committee of the Board of Directors) relating to the matter giving 5 rise to the actual or potential conflict. In addition, to the extent that a proposed transaction or activity could constitute a transaction with a "related person" within the meaning of Item 404 of Regulation S-K promulgated under the Securities Act of

1933, such transaction may also require approval by the Audit Committee pursuant to the Company's policies relating to related person transactions.

## VI.   No Loans to Directors or Officers

It is the policy of the Company not to extend or maintain credit, to arrange for the extension of credit, or to renew an extension of credit, in the form of a personal loan to or for any Director or executive officer of the Company. Any questions about whether a loan has been made to a Director or executive officer in violation of this policy should be directed to the Company's Chief Executive Officer or Chief Financial Officer.

## VII.   Outside Directorships and Other Outside Activities

Although the activities of an Employee or Director outside the Company are not necessarily a conflict of interest, a conflict could arise depending upon the Company's relationship with the other party with whom the Employee or Director is involved. Outside activities may also be a conflict of interest if they cause, or are perceived to cause, an Employee or Director to choose between that interest and the interests of the Company. You should not engage in any outside activity that interferes with your performance or responsibilities to the Company. An Employee may not serve as a director, partner, employee of, or consultant to, or otherwise work for or receive compensation for personal services from, any affiliate, customer, partner, supplier, distributor, reseller, licensee or competitor of the Company or any other business entity that does or seeks to do business with the Company without prior written approval of the Company pursuant to this Code of Conduct. In no circumstance, however, will an Employee be permitted to serve as a director of a competitor of the Company. Serving in such a capacity for a company that is not an affiliate, customer, partner, supplier, distributor, reseller, licensee or competitor of the Company may be permitted, but such activities must be approved in advance by the Employee's supervisor and the Chief Executive Officer or Chief Financial Officer. Employees are encouraged to serve as a director, trustee or officer of non-profit organizations in their individual capacity and on their own time, but they must obtain prior approval from the Company's Chief Executive Officer to do so as a representative of the Company. The guidelines in this Section are not applicable to Directors that do not also serve in management positions within the Company.

## VIII.  Corporate Opportunities

Employees and Directors are prohibited from: (a) Personally taking for themselves, or their family members, opportunities that are discovered through the use of corporate property, information or position; 6 (b) Using corporate property, information or position for personal gain or for the gain of their family members; and (c) Competing with the Company. In the interest of clarifying the definition of "Competing with the Company," if any Director of the Company who is also a partner or employee of an entity that is a holder of the Company's common stock, or an employee of an entity that manages such an entity (each, a "Fund"), acquires knowledge of an opportunity of interest for both the Company and such Fund other than in connection with such individual's service as a member of the board of directors of the Company (including, if applicable, such board member acquiring such knowledge in such individual's capacity as a partner or employee of the Fund or the manager or general partner of a Fund), then, provided that such director has acted in good faith, such an event shall be deemed not to be "Competing with the Company" under this Section. Employees and Directors owe a duty to the Company to advance the Company's legitimate interests when the opportunity to do so in a legal and ethical manner arises.

## IX.    Fair Dealing

The Company seeks to excel while operating fairly and honestly, never through unethical or illegal business practices. Each Employee and Director should endeavor to deal fairly with the Company's customers, suppliers, competitors and Employees. No Employee or Director should take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts, or any other unfair dealing practices. More specifically, we: (a) Prohibit the use or acceptance of bribes and any other form of improper payment to further our business interests and require all employees to abide by our policies relating to international business activities which prohibits this conduct; (b) Limit marketing and client entertainment expenditures to those that are necessary, prudent, job related and consistent with our policies and all applicable laws; (c) Require accurate communication in our advertising, literature and other public statements and seek to eliminate misstatements of fact or misleading impressions. (d) Reflect accurately on all invoices to customers the price and terms of sale for services sold or rendered; (e) Protect all proprietary data our customers, partners or suppliers provide to us as reflected in our agreements with them or as compelled by law; (f) Prohibit our representatives from otherwise taking unfair advantage of our customers, partners or suppliers,

or other third parties, through manipulation, concealment, abuse of privileged information or any other unfair-dealing practice; and (g) Require integrity, truthfulness and transparency in our dealings with others.

## X.     Protection and Proper Use of Company Assets

Theft, carelessness and waste have a direct impact on the Company's profitability. Employees and Directors should protect the Company's assets and ensure their efficient use. All Company assets should be used for legitimate business purposes. Company assets include: (1) intellectual property such as patents, trademarks, copyrights, business and marketing plans, engineering ideas, designs, salary information and any unpublished financial data and reports (and unauthorized use or distribution of this information is a violation of Company policy); and (2) personal computers, tablets or communication devices provided to you by the Company for business use. The Company will not be responsible for any personal data stored on, or transmitted through Company owned devices.

## XI.    Confidentiality

Employees and Directors should maintain the confidentiality of information entrusted to them by the Company or its affiliates, customers, partners, distributors and suppliers, except when disclosure is specifically authorized by the Company or required by law. Any questions about whether information is confidential should be directed to the Company's Chief Executive Officer or Chief Financial Officer. Employees and Directors also have a duty to protect the Company's intellectual property and other business assets. We take our intellectual property, business systems and the security of Company property very seriously. Good security is critical in protecting the intellectual property development that fuels the Company's growth, the livelihood of its Employees, and its shareholders' investments. The Company's files, personal computers, networks, software, internet access, email, voice mail and other business equipment and resources are provided for business use and they are the exclusive property of the Company. Misuse of such Company property is not tolerated. These and other obligations relating to confidentiality, security and the Company's intellectual property can be found in your employment agreements.

    ….

## XV. Reporting Obligations and Conduct of Investigations

This Code of Conduct reflects the importance of acting with integrity in everything we do at the Company. If you believe there has been a violation of this Code of Conduct, you have a responsibility to report it immediately in accordance with the Whistleblower Policy. Employees may bring any other concerns they have to their Human Resources representative or any member of the Company's management team. Anyone who believes that questionable accounting or auditing conduct or practices have occurred or are occurring should refer to the Whistleblower Policy for instructions on reporting such concerns. All reports concerning violations of this Code of Conduct will be investigated promptly as described in the Whistleblower Policy. The Board of Directors also reserves the right to investigate any violation and determine appropriate disciplinary action on its own or to designate others to do so. The Company's Board of Directors or its designee will investigate violations and determine appropriate disciplinary action for matters involving members of the board of directors or executive officers. Anyone violating this Code of Conduct will be subject to disciplinary action up to and including termination of employment or service. Anyone with knowledge of a violation who fails to promptly report or correct it, or who directs or approves a violation, may also be subject to disciplinary action, up to and including termination of employment or service. If you have any questions regarding your own conduct and how to act consistently with this Code, please seek assistance from any appropriate individual. If you are unsure of what to do in any situation, seek guidance before you act. Any waivers of the provisions of this Code for executive officers or directors must be approved by the Board of Directors. All such waivers, and the reasons for them, will be publicly disclosed within four business days (or such period of time as may be required by applicable law or regulations).

## XVI. No Retaliation

Any Employee or Director who observes possible unethical or illegal conduct is encouraged to report his or her concerns. Reprisal, threats, retribution or retaliation against any 9 person who has in good faith reported a violation or suspected violation of law, this Code of Conduct or other Company policies, or against any person who is assisting in any investigation or process with respect to such a violation, is prohibited. Any Employees or Directors involved in retaliation will be subject to serious disciplinary action by the Company. Such actions by Employees or Directors could also subject the Company to criminal or civil actions for acts of retaliation.

Verified Shareholder Derivative Complaint

**XVII. Code of Ethics for the CEO and Senior Financial Officers and Employees with Financial Reporting Responsibilities**

In addition to being bound by all other provisions of this Code of Conduct, the Chief Executive Officer, the Chief Financial Officer and other senior financial officers, and Company employees with financial reporting responsibilities are subject to the following additional specific policies: (a) The Chief Executive Officer and all senior financial officers and employees with financial reporting responsibilities are responsible for full, fair, accurate, timely and understandable disclosure in the periodic reports required to be filed by the Company with the SEC and in other public communications made by the Company. Accordingly, it is the responsibility of such officers and employees to promptly bring to the attention of the Audit Committee any material information of which he or she may become aware that affects the disclosures made by the Company in its public filings or otherwise assist the Audit Committee in fulfilling its responsibilities as specified in the Company's Audit Committee Charter. (b) Each such employee shall promptly bring to the attention of the Audit Committee any information he or she may have concerning (a) significant deficiencies in the design or operation of internal controls which could adversely affect the Company's ability to record, process, summarize and report financial data or (b) any fraud, whether or not material, that involves management or other Employees who have a significant role in the Company's financial reporting, disclosures or internal controls. (c) Each such employee shall promptly bring to the attention of the Audit Committee, and, in the case of each senior financial officer, the Chief Executive Officer, any information such officer may have concerning any violation of the Code of Conduct, including any actual or apparent conflicts of interest between personal and professional relationships, involving any management or other Employees who have a significant role in the Company's financial reporting, disclosures or internal controls in accordance with the Company's Whistleblower Policy. (d) Each such employee shall promptly bring to the attention of the Audit Committee (and, in the case of each senior financial officer, the Chief Executive Officer), any information such officer may have concerning evidence of a material violation of the securities or other laws, rules or regulations applicable to the Company and the operation of its business, by the Company or any agent thereof in accordance with the Company's Whistleblower Policy. 10 (e) The Board of Directors shall determine, or designate appropriate persons to determine, appropriate actions to be taken in the event of violations of the Code of Conduct or of

these additional procedures by the Chief Executive Officer and the Company's senior financial officers, and employees with financial reporting responsibilities. Such actions shall be reasonably designed to deter wrongdoing and to promote accountability for adherence to the Code of Conduct and to these additional procedures, and shall include written notices to the individual involved that the Board has determined that there has been a violation, censure by the Board, demotion or re-assignment of the individual involved, suspension with or without pay or benefits (as determined by the Board) and potential termination of the individual's employment. In determining what action is appropriate in a particular case, the Board of Directors or such designee shall take into account all relevant information, including the nature and severity of the violation, whether the violation occurred once or repeatedly, whether the violation appears to have been intentional or inadvertent, whether the individual in question had been advised prior to the violation as to the proper course of action and whether or not the individual in question had committed other violations in the past.

34.     At all times relevant hereto, the Individual Defendants were the agents of each other and were at all times acting within the course and scope of such agency.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

35.     The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct throughout the Relevant Period.    During the Relevant Period, the Individual Defendants caused the Company to conceal the true facts as alleged herein.

36.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (i) facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment; (ii) to conceal adverse information concerning the Company's operations, financial condition, future business prospects, internal controls, and

Verified Shareholder Derivative Complaint

bonuses provided to employees; and (iii) to artificially inflate the Company's stock price.

37.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully, recklessly, or negligently to conceal material facts, misrepresent its financial results, and violate applicable laws.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants who are directors of Resonant was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

38.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his overall contribution to, and furtherance of, the wrongdoing.

39.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Resonant, and was at all times acting within the course and scope of such agency.

## **BACKGROUND**

40.    The Company currently has no revenues or developed products. It is developing its first commercial duplexer design in collaboration with Skyworks Solutions, Inc.—a leading supplier of RF front-ends for mobile devices—pursuant to a development agreement.

41.    The development agreement contains the following progress milestones:

- Milestone 1 (Resonator Designs)—Design a set of resonators, fabricate using an approved high volume manufacturer and provide test results.

- Milestone 2 (First Duplexer Design)—Design the first iteration of a fully-packaged duplexer, fabricate using the approved manufacturer, provide test results and deliver samples.

- Milestone 3 (Second Duplexer Design)—Design the second iteration of a fully-packaged duplexer, fabricate using the approved manufacturer, provide test results and deliver samples.

- Milestone 4 (Production-Ready Duplexer Design)—Design production-ready, fully-packaged duplexer, fabricate using the approved manufacturer, provide test results and deliver samples.

## DEFENDANTS' MISCONDUCT

42.    The Relevant Period starts on August 14, 2014, when the Company filed its 2014 2nd Quarter 10-Q with the SEC, which included its unaudited condensed consolidated financial statements for the three and six month periods ended June 30, 2014 and 2013. The 2014 2nd Quarter 10-Q stated that Defendant Lingren and John Philpott ("Philpott") evaluated the effectiveness of the Company's disclosure controls

Verified Shareholder Derivative Complaint

and procedures as of June 30, 2014 and concluded that the Company's disclosure controls and procedures were effective.

43.    The 2014 2nd Quarter 10-Q was signed by Philpott. The 2014 2nd Quarter 10-Q also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendant Lingren and Philpott, which stated that the financial information contained in the 2014 2nd Quarter 10-Q was accurate.

44.    The statements referenced in ¶¶42 – 43 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to the Individual Defendants or recklessly disregarded by them. Specifically, the Individual Defendants made false and/or misleading statements and/or failed to disclose that: (1) there were errors in the valuation of warrant liabilities, weighted average shares outstanding and earnings per share and the notes to the condensed consolidated financial statements for the three and six months ended June 30, 2014 and 2013; (2) the Company's disclosure controls and procedures were not effective as of June 30, 2014; and (3) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

45.    On November 6, 2014, the Company issued a press release announcing the financial results and provided a business update for the third quarter ended September 30, 2014. In the press release, Defendant Lingren stated in part:

Verified Shareholder Derivative Complaint

We are pleased to report that we completed Milestone 3 to our customer's satisfaction on our first development agreement. The duplexer we produced to meet this milestone exhibits competitive performance and represents a significant accomplishment for our engineering team. ***We now expect to complete Milestone 4 in the first quarter of 2015.***

[Emphasis added].

46.    On December 15, 2014, the Company participated in Ascendiant's Quarterly Management Discussion Series. During the call, Defendant Lingren expressed a high level of confidence with no surprises about meeting the milestone 4 requirements and presented it as "Test we already have answers to <...> It's mostly reliability/qualification testing."

47.    The statements referenced in ¶¶45 – 46 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to the Individual Defendants or recklessly disregarded by them. Specifically, the Individual Defendants made false and/or misleading statements and/or failed to disclose that Resonant would be unable to meet Milestone 4 in the first quarter of 2015 and as a result of the foregoing, the Company's statements concerning its business operations and prospects were materially false and misleading at all relevant times.

## **THE TRUTH SLOWLY EMERGES**

48.     On October 8, 2014, the Company filed a Form 8-K with the SEC revealing that its previously issued unaudited condensed consolidated financial statements for the three and six month periods ended June 30, 2014 and 2013 included in its 2014 2nd Quarter 10-Q needs to be restated and that it had a material weakness in its internal controls as of June 30, 2014. The Form 8-K states in part:

**Item 4.02    Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

We filed a Quarterly Report on Form 10-Q for the quarter ended June 30, 2014 with the Securities and Exchange Commission on August 14, 2014 (the "Original Filing").  We plan to amend the Original Filing to amend and restate our unaudited condensed consolidated financial statements and related disclosures for the three and six months ended June 30, 2014 and 2013.

*Decision to Restate and Reliance on Prior Financials*

On October 2, 2014, we concluded that investors should no longer rely on the previously issued unaudited condensed consolidated financial statements for the three and six month periods ended June 30, 2014 in our Original Filing (the "Affected Periods").  We reached our conclusion after discussion with our Audit Committee and a joint discussion with our independent registered public accounting firm.

We also identified a material weakness in our internal controls as of June 30, 2014.  We are taking steps to remediate this weakness.

*Valuation of Warrant Liabilities*

We reviewed the accounting treatment of our bridge warrants, offering warrants and consulting warrants (the "Subject Warrants") and concluded that the related warrant liabilities should have been permanently reclassified as equity effective as of May 29, 2014, the date of our initial public offering (the "IPO").  We based our conclusion on the fact that the redemption and put features of the Subject Warrants automatically

terminated on the date of the IPO.  Consequently, we should have also ceased recording any further fair value adjustments after the date of the IPO associated with quarterly adjustments to the fair value of warrant liabilities.  Due to the elimination of the warrant liabilities, we will not record any further quarterly adjustments for the fair value of warrant liabilities or any associated gain or loss from such adjustments.

*Weighted Average Shares Outstanding and Earnings per Share*

We discovered an error in the calculation of the weighted average shares outstanding for the Affected Periods.  Correcting this error has increased the loss per share for both of the Affected Periods.

*Revision to Notes to Condensed Consolidated Financial Statements*

We concluded that the notes to the condensed consolidated financial statements should be amended to include additional disclosures for warrant liabilities, fair value of financial instruments and restatement of condensed consolidated financial statements.

49.     On this news, shares of Resonant fell $0.13 per share from its previous closing price to close at $6.35 per share on October 9, 2014.

50.     On October 10, 2014, the Company filed the Amended 2014 2nd Quarter 10-Q to amend and restate its unaudited condensed consolidated financial statements and related disclosures for the three and six months ended June 30, 2014 and 2013.

51.     On this news, shares of Resonant fell $0.25 per share from its previous closing price to close at $6.05 per share on October 13, 2014.

52.     On February 26, 2015, the Company issued a press release announcing the financial results and provided a business update for the fourth quarter and year ended December 31, 2014, which revealed the Company's inability to meet Milestone 4 pursuant to its development agreement. The press releases states in part:

Verified Shareholder Derivative Complaint

***We have delivered a completed duplexer design for consideration to our first customer. Our design does not meet all the specifications in the development agreement***, but we believe it delivers competitive performance, which we view as a major accomplishment. Our customer's decision whether to use our design is complex and based on a number of considerations, many of which are beyond our control.

(Emphasis added).

53.     On this news, shares of Resonant fell $5.07 per share or over 32% from its previous closing price to close at $10.40 per share on February 27, 2015.

54.     The Individual Defendants breached their fiduciary duties by misrepresenting the Company's financial statements, effectiveness of its disclosure controls and procedures and ability to meet Milestone 4 pursuant to its development agreement. Once the Individual Defendants' breach of fiduciary duty were disclosed to the market, Resonant's stock price reacted negatively as the artificial inflation was removed from it.

55.     In connection with the above detailed misrepresentations and failures to disclose material facts, class action securities lawsuits were filed against the Company and Defendant Lingren in the United States District Court, Central District of California. The Complaints allege (among other things) that the Company and certain officers of the Company made false and misleading statements in violation of the federal securities laws.

## DAMAGES TO RESONANT

56.     As a direct and proximate result of the Individual Defendants' conduct, Resonant has expended and will continue to expend significant sums of money.

57.     Such expenditures include, but are not limited to, legal fees associated with the class action lawsuits filed against the Company and Defendant Lingren for violations of the federal securities laws, and amounts paid to outside lawyers, accountants, and investigators in connection with any internal investigations.

58.     Such costs include, but are not limited to, compensation and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company.

59.     As a direct and proximate result of the Individual Defendants' conduct, Resonant has suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the misrepresentations made by the Individual Defendants and caused to be made by the Company by the Individual Defendants.

## **DERIVATIVE ALLEGATIONS**

60.     Plaintiff brings this action derivatively and for the benefit of Resonant to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Resonant, gross mismanagement, abuse of control, and unjust enrichment, as well as the aiding and abetting thereof.

Verified Shareholder Derivative Complaint

61.   Resonant is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

62.   Plaintiff is, and at all relevant times has been, a Resonant shareholder. Plaintiff will adequately and fairly represent the interests of Resonant in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

63.   Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth herein.

64.   A pre-suit demand on the Board of Resonant is futile and, therefore, excused.  At the time of filing of this action, the Board consisted of the following individuals: Lingren, Major, Hammond, Cooper, Kornfeld, and Joseph (collectively, the "Directors"). Plaintiff needs only to allege demand futility as to three of the six directors that were on the Board at the time this action was commenced.

65.   Defendant Lingren acted as the Company's CEO, Chairman of the Board, and as a Director during the Relevant Period, and thus, is a non-independent Director.  Lingren received from the Company $533,111 in compensation in 2014 and $114,638 million in 2013, and beneficially owns 426,676 shares of Company common stock.  Due to his substantial equity interest in the Company and his substantial income received from the Company, Lingren has a vested interest in causing the Company stock price to be as high as possible. Moreover, Lingren made

the false and misleading statements of material fact on August 14, 2014.  As a result, Lingren breached his fiduciary duties.  Additionally, Lingren is a defendant in the federal securities fraud class action lawsuits. Thus, Lingren faces a substantial likelihood of liability, and demand upon him is futile and, therefore, excused.

66.    Defendant Major is the Company Chairman of the Board. In 2014, Major received from the Company $181,500 in compensation and beneficially owns 12,000 shares of Company common stock. Due to his substantial equity interest in the Company and his substantial income received from the Company, Major is beholden to Defendant Lingren and has a vested interest in causing the Company stock price to be as high as possible.  Additionally, Major is on the Audit Committee which is responsible for reviewing the Company's financial statements and related disclosures, as well as reviewing the adequacy and effectiveness of the Company's accounting and financial reporting processes, systems of internal control, and disclosure controls and procedures. Therefore since the allegations in the complaint directly relate to the responsibilities and conduct of the Audit Committee, Major as a member of the Audit Committee, is not a disinterested director. Thus, as Major is not a disinterested director, and as he faces a substantial likelihood of liability, demand upon him is futile and, therefore, excused.

67.    Defendant Hammond received from the Company $464,720 in compensation in 2014 and $103,187 in 2013 and beneficially owns 426,666 shares of Company common stock. Additionally, Hammond has a base salary of $250,000.

Due to his substantial equity interest in the Company and his substantial income received from the Company, Hammond is beholden to Defendant Lingren and Philpott and has a vested interest in causing the Company stock price to be as high as possible. Moreover, given that Hammond is a co-founder of the Company along with Defendant Lingren, it is unlikely that Hammond will proceed against Defendant Lingren, due to his long term business and personal relationship with Defendant Lingren. Thus, as Hammond is not a disinterested director, and as he faces a substantial likelihood of liability, demand upon him is futile and, therefore, excused.

68. Defendant Cooper received from the Company $181,500 in compensation in 2014 and beneficially owns 27,000 shares of Company common stock. Due to her substantial equity interest in the Company and her substantial income received from the Company, Cooper is beholden to Defendant Lingren and has a vested interest in causing the Company stock price to be as high as possible. Additionally, Cooper is on the Audit Committee which is responsible for reviewing the Company's financial statements and related disclosures, as well as reviewing the adequacy and effectiveness of the Company's accounting and financial reporting processes, systems of internal control, and disclosure controls and procedures. Therefore since the allegations in the complaint directly relate to the responsibilities and conduct of the Audit Committee, Cooper as a member of the Audit Committee, is not a disinterested director. Thus, as Cooper is not a disinterested director, and as she

faces a substantial likelihood of liability, demand upon her is futile and, therefore, excused.

69.     Defendant Kornfeld received from the Company $181,500 in compensation in 2014 and beneficially owns 12,000 shares of Company common stock. Due to his substantial equity interest in the Company and his substantial income received from the Company, Kornfeld is beholden to Defendant Lingren and has a vested interest in causing the Company stock price to be as high as possible. Additionally, Kornfeld is on the Audit Committee which is responsible for reviewing the Company's financial statements and related disclosures, as well as reviewing the adequacy and effectiveness of the Company's accounting and financial reporting processes, systems of internal control, and disclosure controls and procedures. Therefore since the allegations in the complaint directly relate to the responsibilities and conduct of the Audit Committee, Kornfeld as a member of the Audit Committee, is not a disinterested director. Thus, as Kornfeld is not a disinterested director, and as he faces a substantial likelihood of liability, demand upon him is futile and, therefore, excused.

70.     Defendant Joseph will be compensated on an annual retainer of $50,000 in cash payable quarterly, an initial equity award of 24,000 restricted stock unites and an annual equity award of restricted stock units with a grant date fair value of $50,000. Due to his substantial equity interest in the Company and his substantial income received from the Company, Joseph is beholden to Defendant Lingren and

has a vested interest in causing the Company stock price to be as high as possible. Thus, as Joseph is not a disinterested director, and as he faces a substantial likelihood of liability, demand upon him is futile and, therefore, excused.

71.     In complete abdication of their fiduciary duties, the Directors either participated in or were recklessly unaware of the fraudulent scheme to inflate the Company's stock price during the Relevant Period by failing to disclose that: (1) there were errors in the valuation of warrant liabilities, weighted average shares outstanding and earnings per share and the notes to the condensed consolidated financial statements for the three and six months ended June 30, 2014 and 2013; (2) the Company's disclosure controls and procedures were not effective as of June 30, 2014; and (3) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times. The fraudulent scheme was intended to make the Company appear more profitable and attractive to investors, and to increase the Company stock price.  As a result, the Directors breached their fiduciary duties. Thus, each of the Directors face a substantial likelihood of liability, and demand upon them is futile.

72.     Demand is excused as to all of the Directors because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of their scheme, which renders them unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

73.    The Directors, as members of the Board, were and are subject to the Code of Ethics.  The Code of Ethics is applicable to all employees, including the Company's officers and directors. The Code of Ethics goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations.  The Code of Ethics required the Directors to also adhere to Resonant's standards of business conduct.  The Code of Ethics proclaims that " [t]he purpose of this Code of Conduct is to promote ethical conduct, compliance with applicable laws and regulations, and deter wrongdoing. The policies outlined in this Code of Conduct are designed to ensure that the Company's employees, including its officers (collectively referred to herein as "Employees") and members of its board of directors ("Directors"), act in strict accordance with the letter and the spirit of the laws and regulations that apply to the Company's business, and in a manner consistent with standards of high integrity." Also, the Code of Ethics demands that all employees, officers, and directors when making public statements shall convey "accurate information… [and] eliminate misstatements of fact or misleading impressions." The Directors did not comply with the requirements of the Code of Ethics.  The Directors violated the Code of Ethics by making and/or facilitating the false misrepresentations set forth, and by failing to correct those misrepresentations until February 26, 2015.  Because these Directors violated the Code of Ethics, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

74.     Furthermore, demand in this case is excused because the Directors, who are named as defendants in this action, control the Company and are beholden to each other.  The Board is especially beholden to Defendant Lingren, who is not only the Company's Director, but its CEO and founder who made the false and misleading statements of material fact during the Relevant Period.

75.     Members of the Board have longstanding business and personal relationships with each other and the Individual Defendants that preclude them from acting independently and in the best interests of the Company and the shareholders. These conflicts of interest precluded the Board from adequately monitoring the Company's operations and calling into question the Individual Defendants' conduct. Thus, any demand on these Directors would be futile.

76.     Resonant has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Directors have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Resonant any part of the damages Resonant suffered and will continue to suffer thereby.  Thus, any demand on these Directors would be futile.

77.     The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgments as it was based on bad faith and intentional, reckless, or disloyal misconduct.  Thus, none of the Directors can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists).  As a majority of the

Verified Shareholder Derivative Complaint

Directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company.  Accordingly, demand is excused as being futile.

78.     The acts complained of herein constitute violations of fiduciary duties owed by Resonant's officers and directors and these acts are incapable of ratification.

79.     The Directors may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the stockholders of Resonant.  If there is a directors' and officers' liability insurance policy covering the Directors, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Directors, known as, *inter alia*, the "insured-versus-insured exclusion."  As a result, if the Directors were to sue themselves or certain of the officers of Resonant, there would be no directors' and officers' insurance protection.  Accordingly, the Directors cannot be expected to bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery.  Thus, demand on the Directors is futile and, therefore, excused.

Verified Shareholder Derivative Complaint

80.     If there is no directors' and officers' liability insurance, then the Directors will not cause Resonant to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability.  Accordingly, demand is futile in that event, as well.

81.     Thus, for the reasons set forth above, all of the Directors, and, if not all of them, certainly a majority of the Directors, cannot consider a demand with disinterestedness and independence.  Consequently, a demand upon the Board is excused as futile.

82.     Overall, the Company will most likely expend millions of dollars in internal investigations and defending the securities fraud class actions.  It may be liable for millions of dollars in damages if it loses or settles the related securities fraud class actions.  Moreover, the Company's reputation has been severely damaged.  The Company has also wasted a substantial amount of money in compensating the Individual Defendants as directors and officers.  Its market capitalization has been severely diminished and its prospect of raising equity in the future is questionable.  All of this substantial damage stems proximately from the Individual Defendants' conscious and willful breaches of their fiduciary duties, abuse of control, and other malfeasance.

# FIRST CLAIM

## Against Individual Defendants for Breach of Fiduciary Duties

Verified Shareholder Derivative Complaint

83.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

84.     Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Resonant's business and affairs.

85.     Each of the Individual Defendants violated and breached his fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

86.     The Individual Defendants' conduct set forth herein was due to their intentional, reckless, or negligent breach of the fiduciary duties they owed to the Company, as alleged herein.  The Individual Defendants intentionally, recklessly, or negligently breached or disregarded their fiduciary duties to protect the rights and interests of Resonant.

87.     In breach of their fiduciary duties owed to Resonant, the Individual willfully participated in misrepresentation of the Company's business operations and prospects and failed to correct the Company's public statements, rendering them personally liable to the Company for breaching their fiduciary duties.

88.     The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent its business operations and prospects and they failed to correct the Company's public statements.  The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed

38

to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Resonant's securities.

89.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

90.    Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   Such material misrepresentations and/or omissions were caused to be made knowingly or recklessly.

91.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Resonant has sustained and continues to sustain significant damages.   As a result of the misconduct alleged herein, Individual Defendants are liable to the Company.

## SECOND CLAIM

### Against Individual Defendants for Abuse of Control

92.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

93.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Resonant, for which they are legally responsible.

94.     As a direct and proximate result of the Individual Defendants' abuse of control, Resonant has sustained significant damages.  As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations of candor, good faith, and loyalty, Resonant has sustained and continues to sustain significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

## THIRD CLAIM

### Against Individual Defendants for Gross Mismanagement

95.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

96.     By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Resonant in a manner consistent with the operations of a publicly-held corporation.

97.     As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Resonant has sustained and will continue to sustain significant damages.

Verified Shareholder Derivative Complaint

98.   As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

99.   Plaintiff, on behalf of Resonant, has no adequate remedy at law.

## FOURTH CLAIM

### Against Individual Defendants for Unjust Enrichment

100.  Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

101.  By their wrongful acts and the omissions of material fact that they caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Resonant.

102.  During the Relevant Period, the Individual Defendants either received bonuses, stock options, or similar compensation from Resonant that was tied to the financial performance or artificially inflated valuation of Resonant or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

103.  Plaintiff, as a shareholder and a representative of Resonant, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties.

## PRAYER FOR RELIEF

Verified Shareholder Derivative Complaint

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)     Declaring that Plaintiff may maintain this action on behalf of Resonant, and that Plaintiff is an adequate representative of the Company;

(b)     Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Resonant;

(c)     Determining and awarding to Resonant the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)     Directing Resonant and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Resonant and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Articles of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1.     a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

2.     a provision to permit the shareholders of Resonant to nominate at least four candidates for election to the Board; and

3.  a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

(e)  Awarding Resonant restitution from Individual Defendants, and each of them;

(f)  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(g)  Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 25, 2015                    Respectfully submitted,

                                                     **THE ROSEN LAW FIRM, P.A.**

                                                 /s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

## VERIFICATION

I, Lisa Doyle, am the plaintiff in the within action and am a citizen of the State of New York. I have read the foregoing complaint and know the contents thereof. The allegations of the complaint are true of my personal knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this _21st_ day of September 2015.

_Lisa Doyle_
Lisa Doyle